IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02963

JOHN MEGGS, Individually, and
ACCESS 4 ALL, INC., a Florida Non-Profit Corporation

        Plaintiffs,

vs.

MCR DENVER SOUTH TENANT, LLC, a Delaware Limited Liability Company

        Defendant.

_____/

# COMPLAINT

## Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Non-Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, MCR DENVER SOUTH TENANT, LLC, a Delaware Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 et seq. ("CADA").

## The Parties

1.     Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris. Although a resident of California, Mr. Meggs splits his time between California and Colorado.

1

2. Plaintiff, ACCESS 4 ALL, INC., is a non-profit corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, MCR DENVER SOUTH TENANT, LLC, a Delaware Limited Liability Company, owns or operates a place of public accommodation, in this instance a hotel, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4. Defendant's property, also known as the Hilton Garden Inn Denver South ("Hilton"), is a hotel located at 9290 Meridian Blvd, Englewood, CO 80112, in the County of Douglas ("Subject Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8. The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

9.  Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the use of a wheelchair to ambulate.

10. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

## Factual Background

11. Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

12. Mr. Meggs encounters architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous and even dangerous for him and other wheelchair users.

13. The barriers to access that Mr. Meggs experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

of the complaints he has been forced to make to the employees and management at various establishments in the past, normally to no avail. Thus, he now finds his redress through the ADA.

14. Mr. Meggs has visited Hilton on multiple occasions, his last visit occurring on or about September 7, 2021. Mr. Meggs stayed at Hilton as an overnight guest and bone fide purchaser to avail himself of the goods and services offered to the public within but found that the Subject Property was littered with violations of the ADA, both in architecture and in policy.

15. Mr. Meggs has a reservation to return to Hilton on July 15, 2022, during a visit to the Denver area where he is a frequent traveler, regularly conducts business, and is speculating on property. He intends to revisit Hilton not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - he hopes that his return visit is not made in vain.

16. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at Hilton.

17. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

18. Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 23 of this complaint.

19. Following any resolution of this matter Plaintiffs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered

by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

20. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

21. The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

22. A preliminary inspection of the Subject Property has shown that violations of the ADA exist.

23. The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to Hilton:

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Subject Property, are not located on compliant accessible routes to the building; violations of ADAAG Section 4.6 and Section 502 of the 2010 Standards for Accessible Design. Mr. Meggs could not unload freely and safely from vehicles in this area, nor could he safely access the building due to the lack of accessible route; he was forced to travel around obstacles and through traffic to reach the building.

b. The designated accessible parking spaces at the Subject Property contain abrupt changes of level, lack compliant access aisles, and lack a direct route from the parking area to the building, in violation of Section 402 and 502 of the 2010 Standards for Accessible Design.

    Mr. Meggs was endangered by the lack of adequate maneuvering clearance, and the lack of a direct route which forced him to travel around obstacles and through the traffic area of the parking lot to reach the lobby.

c. The exterior accessible route throughout the Subject Property is not maintained, contains abrupt changes of level, cross-sloping beyond the allowable limits; in violation of Section 402 and 502 of the 2010 Standards for Accessible Design. Mr. Meggs is presented with tipping hazards and forced to travel around obstacles while traversing the exterior accessible route from the parking lot to the lobby.

d. Hilton fails to provide a safe and accessible route to and from the porte cochere which has impeded Mr. Meggs' ability to load/unload from vehicles in the passenger loading zone; a violation of Section 503 of the 2010 Standards for Accessible Design. Mr. Meggs could not make use of the passenger unloading zone due to sloping, the lack of unloading space, and improper curb ramps.

e. The Subject Property fails to provide a compliant accessible route to the adjacent street, sidewalk, and/or public transportation stop, violating Section 206.2.1 of the 2010 Standards for Accessible Design. This barrier has prevented Mr. Meggs from accessing the property from these areas and limited his modes of transportation.

f. Mr. Meggs could not enter the Hilton from the South entrance nor the Ballroom entrance due to the presence of steps, a violation of Sections 402 and 404 of the 2010 Standards for Accessible Design.

**Access to Goods and Services**

g. Hilton fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the

    elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and stored goods on counter tops and a failure to maintain clearance to accessible elements and paths of travel prevented Mr. Meggs from freely traveling about the hotel and using the accessible elements; which include but are not limited to telephones, desks, tables and other elements required to be accessible.

h. Hilton fails to provide a compliant accessible interior route throughout the hotel. The route is impeded by steps and thus Mr. Meggs has been unable to travel freely throughout the hotel, a violation of Section 402 of the 2010 Standards for Accessible Design.

i. Mr. Meggs could not access hotel amenities (phones, workspaces, etc.) nor could he access food counters or dining tables. Hotel amenities are mounted beyond his reach, counter heights are beyond the allowable limits, and the dining tables provided are not wheelchair accessible; a violation of Section 306, 308, and 902 of the 2010 Standards for Accessible Design. These barriers have prevented Mr. Meggs from comfortably accessing these elements within the hotel.

**Restrooms**

j. The restrooms located within the lobby area are not ADA compliant. The barriers to access within these restrooms include a lack of maneuvering clearance, improper water closets, and lavatories that lack the requisite knee clearance; in violation of Section 601 of the 2010 Standards for Accessible Design. Mr. Meggs could not freely access the restroom without assistance.

k. The lobby restroom contained dispensers which were mounted improperly beyond Mr. Meggs' reach, a violation of Section 308 of the 2010 Standards for Accessible Design. Mr.

    Meggs was unable to make use of the improperly mounted dispensers.

l.  The lavatory within the restroom lacked the proper knee clearance, a violation of Section 606 of the 2010 Standards for Accessible Design. Mr. Meggs could not access the lavatory because of the lack of knee clearance; he could not approach nor reach the sink.

**<u>Guestroom</u>**

m.  The restroom located within the designated accessible guestroom contained a roll-in shower with an improperly mounted spray unit, improper grab bars, an improper seat, and excessive sloping; in violation of Section 608, 609, and 610 of the 2010 Standards for Accessible Design. Mr. Meggs could not properly bathe due to improperly located shower controls, as they are mounted well beyond his reach, while the other violations hindered him from doing so comfortably even with assistance.

n.  The water closet within the guestroom restroom contained an improper centerline and improperly mounted grab bars; in violation of Section 604 of the 2010 Standards for Accessible Design. Mr. Meggs could not use the restroom comfortably without assistance.

o.  The guestroom restroom contained toilet tissue dispensers which were mounted improperly beyond Mr. Meggs' reach, a violation of Section 308 of the 2010 Standards for Accessible Design. Mr. Meggs was unable to reach the improperly mounted dispensers.

p.  The guestroom contained elements that were inaccessible to Mr. Meggs. These include the closet/storage area, the iron, the telephone, and the door hardware, a violation of Sections 225.2 and 806.2 of the 2010 Standards for Accessible Design. Mr. Meggs was unable to freely make use of these amenities.

q.  Mr. Meggs could not make use of the guest room door (due to a lack of latch side clearance) or the privacy latch (due to its improperly mounted location), a violation of Sections 308

and 404 of the 2010 Standards for Accessible Design. This ADA violation is of great concern, due to the lack of interior latch-side clearance Mr. Meggs could not exit the guestroom without assistance.

r. The lavatory within the restroom lacked the proper knee clearance, a violation of Section 606 of the 2010 Standards for Accessible Design. Mr. Meggs could not access the lavatory because of the lack of knee clearance; he could not approach nor reach the sink thus he could not wash his hands or brush his teeth without assistance.

s. Mr. Meggs could not make use of the tables or desk within the guestroom due to a lack of proper knee clearance and approach space, a violation of Section 4.32 of the ADAAG and Section 306 of the 2010 Standards for Accessible Design.

t. Curtain controls were improperly located; thus Mr. Meggs could not operate them, a violation of Section 806.2.1 of the 2010 Standards for Accessible Design.

u. There is a lack of clear floor space surrounding the beds, in violation of Sections 305 and 806.2.3 of the 2010 Standards for Accessible Design. Mr. Meggs could not freely enter/exit the bed without assistance.

24. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D;  and the 2010 Standards for Accessible Design ("2010

Standards"), as promulgated by the U.S. Department of Justice.[4]

25. The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at Hilton, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

26. Plaintiffs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27. Defendant has discriminated against Plaintiffs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

29. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

30. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by

---

[4] 28 CFR § 36.104
[5] 42 U.S.C. § 12181(b)(2)(A)(iv)
[6] 42 U.S.C. § 12181(b)(2)(A)(ii)

failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

31. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

32. Pursuant to 28 CFR § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992 must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9]

33. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34. 28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at Hilton must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012 must comply with the 1991 Standards.

---

[7] 42 U.S.C. § 12181(b)(2)(A)(iii)
[8] as defined by 28 CFR § 36.401(a)(2)
[9] 28 CFR § 36.402(a)(2)

b. Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

c. Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

35. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36. Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

37. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter Hilton and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their

violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully request:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d. Such other relief as the Court deems just and proper, and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
**Violation of Colorado Anti-Discrimination Act,
C.S.R. § 24-34-601 et seq. (CADA)**

39. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

---

[10] 42 U.S.C. § 12188(b)(2)

40. John Meggs is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

41. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

42. Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[11]

43. Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

44. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

45. Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

46. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

---

[11] C.S.R. § 24-34-601(2)(b)

48. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

49. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

a. That this Court assume jurisdiction.

b. An injunction ordering Defendant to comply with the ADA and the CADA.

c. An award of monetary damages to Mr. Meggs; to the maximum extent permitted.

d. Reasonable attorney fees and costs.

e. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

f. Other relief that this Court deems just and proper; and is allowable under the CADA.

Respectfully submitted on this 4th day of November 2021.

> _/s/ Jon G. Shadinger Jr._
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 717 E. Elmer Street, Suite 7
> Vineland, NJ 08360
> Phone (609) 319-5399
> Fax (314) 898-0458
> js@shadingerlaw.com
> *Attorney for Plaintiffs,*
> *John Meggs and Access 4 All, Inc.*